SMITH, Judge.
Hollywood Medical Center (HMC) appeals a final order of the Department of Health and Rehabilitative Services (HRS) denying its application for a certificate of need (CON) for a cardiac catheterization laboratory (CCL) in HRS District 10. We affirm.
There are two ways for a hospital to demonstrate “need” as required for issuance of a CON. The hospital can either strictly apply the formula contained in Rule 10-5.11(15)(1), Florida Administrative Code, which gives the projected number of CCLs needed in a particular district for a given year, or a hospital must demonstrate abnormal circumstances justifying departure from the calculation. Fla.Admin. Code Rule 10-5.11(15)(f). At times pertinent to the proceeding, there were seven existing or approved CCLs in District 10. Applying the formula in Rule 10-5.11(15)(1), Florida Administrative Code, the projected number of CCLs needed in District 10 in 1986 (the appropriate planning date) is six. Proceeding under Rule 10-5.11(15)(f), HMC sought to establish need outside the bare mathematical calculation by proof of “not normal” circumstances. It established, among other things, that the 1983 use rate was actually some 39% in excess of the 1981 use rate used in the formula.
HMC first urges that HRS committed reversible error by failing to recognize its own rule (Rule 10-5.11(15)(f)) allowing for establishment of need outside the mathematical formula if the circumstances are “not normal.” In support of its argument, HMC points to a portion of HRS’s final order in which it is stated: “Although the Petitioner has attempted to show need outside the rule need methodology, such data is not authorized under the rule.”
We concede that the quoted portion of HRS’s Final Order is not entirely clear, when read in isolation. However, given the detailed and comprehensive findings of the hearing officer’s order recommending denial of the CON application, which HRS for the most part approved, we find no basis for reversal. .
In ruling on appellant’s exceptions, HRS explained (paragraph 1): “Rule 10-5.11(15), Florida Administrative Code, is a valid rule. It requires the application of 1981 use rate to determine the need for cardiac catheteri-zation in a service area. The use of any other date to determine need under subpar-agraph (1) is unauthorized.” The hearing officer specifically addressed appellant’s failure to establish need under rule 10-5.-11(15)(1) methodology even if the 1983 use rate is used, rather than the 1981 use rate as prescribed by the rule; and in the same paragraph of his Recommended Order, the hearing officer also explained the inapplicability of the 600 procedures standard (sub- *258 part 15(o) of the rule) in weighing the sufficiency of appellant’s proof under the “not normal” exception of subpart 15(f):
15. It is urged by petitioner that once the number of procedures is predicted for 1986, then the need for laboratories should be derived by dividing that number by 600, which is in subpart 15(o) of the rule. While this is the procedure for determining need in the normal case, as found above, it does not follow that the standard of 600 continues to apply to determine need in the abnormal case. The “not normal” exception to subpart 15(f) of the rule operates to except analysis of need not only from the 1981 use rate (subpart 15(1)), but also the 600 procedures standard (subpart 15(c)). Since the 600 standard is only about 50% of maximum capacity, it constitutes a rather low threshold number for commencement of a new laboratory. In effect, although the 1981 use rate apparently predicts only 72% of the need as compared to the 1983 rate, the 600 standard overpredicts need by at least the same amount. As indicated above, even if the 1983 use rate is used, the seven approved laboratories would be easily able to handle this need since the average spread among these laboratories would be about 771 procedures per laboratory.
The hearing officer further elaborated on the issues under “Conclusions of Law,” stating:
1. Since rule 10-5.11(15)(f), F.A.C., allows consideration of “not normal” circumstances as an exception to calculation of need by the formula in subparagraph (1) of the same rule, Petitioner is allowed to present evidence of “not normal” need in Broward County. However, the effect of consideration of a “not normal” circumstance pursuant to rule 10-5.11(15)(f) is that subpart (15)(1), which contains the 1981 use rate, and subpart (15)(o), which contains the 600 procedures standard for allocation among laboratories, no longer necessarily apply. Need must be assessed upon all the evidence if a “not normal” need is proposed by an applicant.
Finally, the hearing officer concluded that there is no need for the proposed cardiac catheterization laboratory, “whether need is computed under the rule or upon consideration of ‘not normal’ need.” These a,nd the other findings contained in the order provide the context in which the Final Order must be viewed, and they are not shown to be factually or otherwise incorrect. So viewed, it is obvious that both the hearing officer and HRS rejected appellant’s attempts to substitute “1983” for “1981” in the use rate factor of the need formula, and to continue to use the 600 procedures standard while admittedly attempting to show need outside the rule methodology. Therefore, there was no error or contradiction in HRS’s conclusions of law in which it stated:
2. The Petitioner has failed to establish extenuating and mitigating circumstances which would justify the granting of its application where no need exists under the rule need methodology in Rule 10-5.11(15). Although the Petitioner has attempted to show need outside the rule need methodology, such data is not authorized under the rule.
Turning to HMC’s second issue, we conclude that HMC has not been denied equal protection under the law. In South Sarasota County Memorial Hospital Association v. Department of Health and Rehabilitative Services, 7 F.A.L.R. 1345 (February 12, 1985), unlike the present case, there was no countervailing evidence to show that notwithstanding the underestimation of the use rate, based on 1981 data, there was still no need for an additional CCL. In Adventist Health System v. Department of Health and Rehabilitative Services, 7 F.A.L.R. 3500 (June 28, 1985), all the evidence demonstrated a severe underestimation of need based on the 1981 data, while in the present case substantial evidence demonstrates no need for an additional CCL in District 10.
The remaining issues raised by appellant are found to be without merit, and the order appealed is AFFIRMED.
*259 WENTWORTH, J., concurs.
BOOTH, C.J., dissents with written opinion.